**IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

AUG 04 2005
DISTRICT COURT DISTRICT OF RHODE ISLAND

MISC 05 0093

| | |
|---|---|
| WILLIAM S. SHANAHAN and ANTARES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MAURICE VALLAT, JAMES COLLINS-TAYLOR, LOUIS BOWEN, ACL NOMINEES LTD., ACL HOLDINGS LIMITED and ACL ASIA LIMITED<br><br>Defendants. | 03 CIV 3496 (MBM)<br><br>Case pending in the United States District Court, Southern District of New York<br><br>**ORAL ARGUMENT REQUESTED** |

**MOTION OF MONTROSE INTERNATIONAL HOLDINGS LIMITED (BVI) TO QUASH THE SUBPOENA DIRECTED TOWARDS IT BY WILLIAM S. SHANAHAN AND ANTARES, LLC**

Pursuant to Fed. R. Civ. P. 45(c), non-party movant Montrose International Holdings Limited (BVI) ("Montrose Holdings") hereby moves to quash a subpoena purportedly served upon it in Rhode Island by William Shanahan and Antares, LLC, the plaintiffs in a case pending in the United States District Court for the Southern District of New York. The facts and arguments upon which this motion is based are set forth in the annexed declarations of David Henderson, sworn to on August 4, 2005, and Ridley M. Whitaker, Esq., sworn to on July 27, 2005 as well as the supporting memorandum filed contemporaneously herewith.

Dated: Providence, Rhode Island
August 4, 2005

Respectfully submitted,

ADLER POLLOCK & SHEEHAN P.C.

By: ______________________
Geoffrey W. Millsom (#6483)

One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: 401-427-6217
Fax: 401-751-0604

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Marc E. Kasowitz
Christopher P. Johnson
Courtney Ozer DeCristofaro
1633 Broadway
New York, NY 10019
Tel: 212-506-1700
Fax: 212-506-1800

Attorneys for Montrose International Holdings Limited (BVI)

CERTIFICATE OF SERVICE

I hereby certify that I am over 18 years of age and not a party to this action. On August 4, 2005, I caused to be served the foregoing Motion Of Montrose International Holdings Limited (BVI) To Quash The Subpoena Directed Towards It By William S. Shanahan And Antares, LLC by regular mail upon Steven I. Locke, Carabba Locke LLP, 100 William Street, Suite 310, New York, NY 10038.

IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MISC 05 0093

| | |
|---|---|
| WILLIAM S. SHANAHAN and ANTARES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MAURICE VALLAT, JAMES COLLINS-TAYLOR, LOUIS BOWEN, ACL NOMINEES LTD., ACL HOLDINGS LIMITED and ACL ASIA LIMITED<br><br>Defendants. | 03 CIV 3496 (MBM)<br><br>Case pending in the United States District Court, Southern District of New York<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF MONTROSE INTERNATIONAL HOLDINGS LIMITED (BVI) TO QUASH THE SUBPOENA DIRECTED TOWARDS IT BY WILLIAM S. SHANAHAN AND ANTARES, LLC**

Pursuant to Fed. R. Civ. P. 45(c), non-party movant Montrose International Holdings Limited (BVI) ("Montrose Holdings") submits this memorandum of law in support of its motion to quash a subpoena (the "Subpoena") purportedly served upon it in Rhode Island by William Shanahan ("Shanahan") and Antares, LLC, the plaintiffs in a case pending in the United States District Court for the Southern District of New York (the "Underlying Action"). The facts upon which this motion is based are set forth in the declarations of David Henderson ("Henderson Decl."), sworn to on August 4, 2005, and Ridley M. Whitaker, Esq. ("Whitaker Decl."), sworn to on July 27, 2005, each of which is submitted herewith.

This Court should quash the Subpoena for two independent reasons. First, this Court lacks personal jurisdiction over Montrose Holdings, which has no connection whatsoever to Rhode Island. Second, the Subpoena on its face seeks information that is

entirely unrelated to the Underlying Action; indeed, it appears that plaintiffs in the Underlying Action are using – and abusing – the Rule 45 subpoena power to conduct a fishing expedition for matters distinct from the Underlying Action. Because this search for irrelevant material imposes an undue burden on a non-party, this Court should quash the Subpoena for this separate reason.

## STATEMENT OF FACTS

### A. Montrose Holdings and Its Absence from This Jurisdiction

Montrose Holdings is a limited liability company organized and existing under the laws of the British Virgin Islands. It does not maintain any office in Rhode Island or anywhere else in the United States. (Henderson Decl., ¶ 2.) A holding company, Montrose Holdings does not conduct any operations itself. (*Id.*, ¶ 3.) It is not licensed to do business and does not do business in Rhode Island. (*Id.*) It generates no revenue or income from sales in Rhode Island. (*Id.*) It maintains no bank accounts and pays no taxes in Rhode Island. (*Id.*) It does not advertise in or direct any marketing efforts towards Rhode Island. (*Id.*) It does not own or lease any real or personal property in Rhode Island. (*Id.*) It has no customers in Rhode Island. (*Id.*) It has not appointed an agent for service of process in Rhode Island. (*Id.*)

Montrose Holdings' primary asset is its investment in Montrose Food & Wine Limited ("Montrose Food & Wine"), also a limited liability company organized and existing under the laws of the British Virgin Islands. (*Id.*, ¶ 4.) Montrose Food & Wine, an intermediary holding company and the buying company for its operating subsidiaries, has operations based in the People's Republic of China and Hong Kong. (*Id.*, ¶ 5.)

Montrose Food & Wine's assets consist primarily of investments in and loans to its operating subsidiaries. (*Id.*) Montrose Food & Wine and its operating subsidiaries conduct their respective businesses by placing orders from the People's Republic of China and Hong Kong with suppliers from around the world, receiving those supplies in the People's Republic of China and Hong Kong and then shipping goods to locations within the People's Republic of China and Hong Kong. (*Id.*, ¶ 6.) Neither Montrose Food & Wine nor its operating subsidiaries maintain an office in Rhode Island, are licensed to do business in Rhode Island, do business in Rhode Island, generate revenue or income from sales in Rhode Island, maintain any bank accounts in Rhode Island, pay taxes in Rhode Island, advertise in or direct any marketing efforts towards Rhode Island, own or lease any real or personal property in Rhode Island, have customers in Rhode Island or have appointed an agent for service of process in Rhode Island. (*Id.*, ¶ 5.)

While Montrose Holdings and its operating subsidiaries lack any connection to Rhode Island, David Henderson, the president of Montrose Holdings, maintains a residence at One Atlantic Avenue, Newport, Rhode Island. (*Id.*, ¶¶ 1, 6.) From that and other locations in the United States, Mr. Henderson will sometimes conduct business on behalf of Montrose Food & Wine and its operating subsidiaries. (*Id.*, ¶ 6.)

## B. <u>The Underlying Action</u>

The Underlying Action was commenced on May 15, 2003 in the Southern District of New York. (Whitaker Decl., ¶ 2.) The Amended Complaint was served on or about December 12, 2003. (*See id.*, Ex. A.) As the Amended Complaint reveals, the Underlying Action relates to a company called Phoenix Telecommunication Limited ("Phoenix"). (*See id.*) The Amended Complaint in the Underlying Action alleges claims

of securities fraud under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and § 12(2) of the Securities Act of 1933, and common law fraud. (*See id.*)

The Amended Complaint makes no mention of Montrose Holdings or Montrose Food & Wine and its operating subsidiaries. (*See id.*) More specifically, the Amended Complaint does not allege that any part of the Montrose companies' formation, operation or finances have any bearing upon the Underlying Action. (*See id.*) Indeed, plaintiffs in the Underlying Action appear to have served the instant Subpoena upon Montrose Holdings simply because two of the individual defendants there – Louis Bowen and James Collins-Taylor – are investors in, and members of the board of, Montrose Holdings.

**C. <u>The Instant Subpoena</u>**

Notwithstanding the lack of any connection between Montrose Holdings and the Underlying Action, plaintiffs have served the instant Subpoena seeking broad discovery of Montrose Holdings. (*See* Henderson Decl., Ex. A.) The Subpoena's Request No. 1, for example, seeks "[a]ll documents concerning the formation and operation of [Montrose Holdings] and affiliated entities." (*Id.*) Request No. 2 then asks for "[a]ll documents concerning [Montrose Holdings'] finances during the time period from January 1, 2000 to the present. (*Id.*) These two Requests do not relate in any way to the Amended Complaint. Neither the formation nor the finances of Montrose Holdings are alleged to, nor could they, have anything to do with the Phoenix company at the heart of the Underlying Action. Phoenix and Montrose Holdings are two different companies and the plaintiffs' complaint in the Underlying Action draws no links between them.

Finally, Request No. 3 demands production of "[a]ll documents provided to, provided by or concerning Louis Bowen, James Collins-Taylor, ACL Nominees Ltd [sic],

ACL Holdings Limited, ACL Asia Limited, ACM Limited, the ACM Group, any ACM Group affiliates, or any other company in which Louis Bowen or James Collins-Taylor maintains an interest." (*Id.*) Insofar as the defendants in the Underlying Action are concerned – Mr. Bowen, Mr. Collins-Taylor, ACL Nominees Ltd., ACL Holdings Limited and ACL Asia Limited – plaintiffs do not need to harass a non-party to collect documents about them; plaintiffs have the full panoply of discovery devices in the Federal Rules to learn what they need to know about the defendants in their action. Insofar as the other entities are concerned – ACM Limited, the ACM Group, any ACM Group affiliates and "any other company in which Louis Bowen or James Collins-Taylor maintains an interest" – these entities are, once again, nowhere mentioned in the Amended Complaint as being relevant to the securities fraud or common law fraud allegations in the Underlying Action.

## ARGUMENT

The Subpoena to Montrose Holdings[1] should be quashed. Neither Montrose Holdings nor any of its direct or indirect subsidiaries has any contacts with Rhode Island, and, as a result, none of those entities is subject to this Court's jurisdiction. Moreover, the Subpoena itself constitutes a grossly overbroad fishing expedition for matters wholly unrelated to the Underlying Action. For these reasons, set forth more fully below, this Court should quash the Subpoena.

---

[1] Montrose Holdings is the only entity clearly identified in the Subpoena. Although the Subpoena purports to be directed to "Montrose [] Holdings … and affiliated entities," the term "affiliated entities" is nowhere defined. Under some definitions of that term, of course, the Subpoena could be virtually limitless in its scope. *See, e.g.*, 17 C.F.R. § 230.405 (2005) (defining "affiliate" for the Securities Act of 1933 as "[a]n affiliate of, or person affiliated with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified"). Because plaintiffs' use of that vague term renders the Subpoena vague and ambiguous with respect to any entity other than Montrose Holdings itself, Montrose Food & Wine, Montrose Hong Kong and Montrose Shanghai do not understand themselves to be within the scope of the Subpoena.

## I. The Subpoena Should Be Quashed Because This Court Lacks Personal Jurisdiction Over Montrose Holdings

Although the Underlying Action is pending in the Southern District of New York, plaintiffs in the Underlying Action issued the instant Subpoena from the District of Rhode Island. The Subpoena should be quashed for the fundamental reason that Montrose Holdings does not have minimum contacts in Rhode Island, such that the District of Rhode Island lacks personal jurisdiction over the company.

It has long been recognized that a corporation "not doing business in the district cannot be compelled to respond" to a subpoena. *Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc.*, 45 F.R.D. 515, 516 (S.D.N.Y. 1968); *see also Miller v. Honda Motor Co.*, 779 F.2d 769, 770 (1st Cir. 1985) (finding no personal jurisdiction over a foreign corporation "which lacks any direct contacts with this jurisdiction"). Rather, "[i]f the non-party named in the subpoena is a corporation, as opposed to an individual, that corporation is [only] amenable to service in any forum within which the corporation has sufficient minimum contacts." *In re Jee*, 104 B.R. 289, 293 (Bankr. C.D. Cal. 1989); *see also Philip Morris Inc. v. Otamedia*, 2004 U.S. Dist. LEXIS 10930, at *7 (S.D.N.Y. June 15, 2004) (stating that it is "well established that a federal district court has the power to impose discovery under the Federal Rules of Civil Procedure when it has personal jurisdiction over the foreign party") (internal quotations and emphasis omitted). In this context, "sufficient minimum contacts" is defined as it is in *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945), where the U.S. Supreme Court stated that presence in a state is not doubted when the activities of a corporation within that state have been "continuous and systematic." Under that test, "the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in

the corporation's behalf are not enough" to obtain personal jurisdiction over the corporation there. *Id.* The test is not "mechanical or quantitative" but rather must depend on the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Id.* at 319. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112-13 (1987) (holding that the plaintiff had not shown a substantial connection "between the defendant and the forum State necessary for a finding of minimum contacts," which requires "*an action of the defendant purposefully directed toward the forum State*") (emphasis in original); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984) (holding that one trip to Texas by the petitioner's CEO, its acceptance of checks drawn on a Texas bank, and purchases by petitioner of equipment from a Texas company were not enough to obtain personal jurisdiction over the petitioner in Texas).

As noted above, Montrose Holdings has no connection to Rhode Island – much less the "continuous or systematic" activities required to give this Court personal jurisdiction over it. Montrose Holdings is a British Virgin Islands company and does not maintain an office anywhere in the United States. (Henderson Decl., ¶ 2.) It is not licensed to do business and does not do business in Rhode Island. (*Id.*, ¶ 3.) It does not generate revenue or income from sales in Rhode Island, does not advertise in Rhode Island or direct any marketing efforts towards this jurisdiction. (*Id.*) It does not maintain a bank account, own property or pay taxes here. (*Id.*) Indeed, as a holding company, Montrose Holdings does not have any business to conduct anywhere.

In assessing minimum contacts, this Court is required to look at Montrose Holdings itself, rather than its operating subsidiaries. *See Thompson Trading Ltd. v.*

*Allied Lyons PLC*, 123 F.R.D. 417, 427-28 (D.R.I. 1989) (stating that the "presence of a subsidiary in a state does not necessarily subject the parent corporation to the jurisdiction of that state" and holding that the mere fact that two of the defendants "wholly own subsidiaries doing business in Rhode Island and have directors in common with" the subsidiaries is "not enough" to obtain personal jurisdiction over the defendants) (internal quotations and brackets omitted); *see also Chichelo v. Hoffman-La Roche, Inc.*, 1997 U.S. Dist. LEXIS 16262, at *6 (S.D.N.Y. Oct. 21, 1997) (stating that the "presence of a wholly owned subsidiary in New York is normally an insufficient basis for establishing jurisdiction"). Even if this Court were to consider the activities of Montrose Holdings' subsidiaries, however, it would reach the same conclusion that there is no presence in Rhode Island. Like Montrose Holdings, its operating subsidiaries conduct their respective businesses from offices in the People's Republic of China and Hong Kong. (Henderson Decl., ¶¶ 5-6.) None of them maintains an office Rhode Island. (*Id.*, ¶ 5.) None of the subsidiaries is licensed to do business here or does business here. (*Id.*) None has Rhode Island customers. (*Id.*) None of them generates revenue or income from sales in Rhode Island and none advertises or markets in Rhode Island. (*Id.*) None owns property in Rhode Island, maintains bank accounts here or pays taxes here. (*Id.*) Thus, even if one were improperly to consider Montrose Holdings' subsidiaries to assess jurisdiction, the conclusion would be the same: there is simply no connection between Montrose Holdings and the Rhode Island jurisdiction from which the Subpoena was issued.

Indeed, the only apparent reason this matter is before this Court is because Montrose Holdings' president, David Henderson, maintains his residence in Newport,

Rhode Island. (*Id.*, ¶¶ 1, 6.) That bare fact is insufficient to give this Court jurisdiction over Montrose Holdings. In *Central Tools, Inc. v. Chicago Brand Indus., Inc.*, CA 03-591 ML, 2004 U.S. Dist. LEXIS 27062 (D.R.I. Apr. 28, 2004), this Court dismissed a complaint pursuant to Rule 12(b)(6) in which the defendant had a similar absence of contacts with Rhode Island. Chicago Brand was a California company with its only place of business in California. *Id.* at *1. Its sales representatives were not located in Rhode Island and never called on any distributors in Rhode Island. *Id.* at *2. No sales materials were sent out actively targeting buyers in Rhode Island. *Id.* Chicago Brand had over 400 distributors, none of which were located in Rhode Island. *Id.* The only contact the company had with Rhode Island was the shipment of one part at the behest of one of its distributors to a company located in Rhode Island. *Id.* at *6-7. The Court found that "[t]his one contact is simply insufficient to establish general jurisdiction" over Chicago Brand. *Id.* at *7. *Accord Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 218 F. Supp. 2d 19, 24-25 (D. Mass. 2002) (finding no personal jurisdiction over the defendant Canadian corporation that conducted business only in Canada with Canadian residents, had no equipment, assets, employees, distributors or offices in the U.S., did not direct any advertising or marketing toward the U.S., and whose products were not available for purchase by U.S. residents). Similarly, neither Montrose Holdings nor any of its subsidiaries maintains an office in Rhode Island. (Henderson Decl., ¶¶ 2, 5.) While Montrose Holdings' president may own a Rhode Island residence, that cannot be sufficient to subject Montrose Holdings to jurisdiction here.

Finally, that Mr. Henderson sometimes conducts business for Montrose Holdings' subsidiaries from his Rhode Island home does not subject Montrose Holdings to this

Court's jurisdiction. In this day and age, with ubiquitous internet connections, laptops, Blackberrys, other internet-ready portable devices, and cell phones, it is a fact of life that business can be conducted anywhere at anytime. If this Court were to find that the mere conduct of business from a remote location were sufficient to confer jurisdiction, it would be promulgating a breathtakingly broad rule that would effectively make every business subject to jurisdiction everywhere. There is no authority for such a rule and it would be flatly inconsistent with the due process concerns that underlie the "minimum contacts" test. In short, there is no basis for finding that Rhode Island has personal jurisdiction over Montrose Holdings and this Court should quash the Subpoena.[2]

**II. The Subpoena Should Be Quashed Because It <u>Seeks Information Unrelated to the Underlying Action</u>**

Even aside from this Court's lack of personal jurisdiction over Montrose Holdings, this Court should quash the Subpoena. The grossly overbroad Subpoena seeks to conduct an unwarranted fishing expedition through the records of the non-party Montrose Holdings. Because the Subpoena's request for records irrelevant to the Underlying Action imposes an undue burden upon Montrose Holdings, the Subpoena should be quashed.

Fed. R. Civ. P. 45(c)(3)(A)(iv) specifically provides that a Court can quash a subpoena if it imposes an "undue burden" upon a non-party. In assessing the burden upon a non-party, a court should read Rule 45 together with Rule 26, which requires that discovery sought be "relevant to the subject matter involved in the pending action." *In*

---

[2] While the foregoing discussion addresses only general and not specific jurisdiction, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n15 (1985), specific jurisdiction is inapplicable to a non-party challenging a subpoena. In particular, specific jurisdiction relates to contacts from which a claim for relief arises, *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 10 (1st Cir. 2002), and there is no claim against non-party Montrose Holdings here.

*the Matter of the Application of Apollo Advisors, L.P. to Quash the Deposition Subpoena*, M8-85, MDL No. 863, 1993 U.S. Dist. LEXIS 7927, at *5-8 (S.D.N.Y. June 4, 1993). Accordingly, "in order to survive a motion to quash, the discovery sought must be relevant to the [underlying] proceeding or it must be reasonably calculated to lead to the discovery of evidence that would be admissible in the [underlying proceeding]." *Id.* at *6. A "subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *In Re Blackstone Partners, L.P.*, 04 Civ. 7757, 2005 U.S. Dist. LEXIS 13177, at *6 (S.D.N.Y. July 1, 2005) (internal quotations omitted); *see also Kirschner v. Klemons*, 99 Civ. 4828, 2005 U.S. Dist. LEXIS 9803, at *6 (S.D.N.Y. May 20, 2005) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996)).[3]

Here, plaintiffs wish to "romp through the files of [a] basically unrelated . . . entit[y] without making the necessary showing of relevance." *Fort James Corp. v. Sweetheart Cup Co.*, 97-C-1221, M8-85, 1998 U.S. Dist. LEXIS 15908, at *8 (S.D.N.Y. Oct. 8, 1998). Specifically, there is no indication in the Amended Complaint that Montrose Holdings is related in any way to the entities involved there, or that Montrose Holdings would have any information relevant to the securities fraud and common law fraud claims asserted there. (*See* Whitaker Decl., Ex. A.) Instead, the Subpoena "sweepingly pursues material with little apparent or likely relevance to the subject

---

3 Stated otherwise, whether "a subpoena imposes an undue burden depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Nova Biomed. Corp. v. i-Stat Corp.*, 182 F.R.D. 419, 423-24 (S.D.N.Y. 1998); *see also Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 03 Civ. 1382, 2003 U.S. Dist. LEXIS 23179, at *23 (S.D.N.Y. Dec. 30, 2003). These factors "must be 'balanced and assessed in the context of an individual subpoena.'" *Kirschner*, 2005 U.S. Dist. LEXIS 9803, at *6 (quoting *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

matter" at issue in the Underlying Action. *Concord Boat Corp.*, 169 F.R.D. at 50. Although the plaintiffs in the Underlying Action commenced a securities fraud action relating to a company called Phoenix, they seek in the instant Subpoena "[a]ll documents concerning the formation and operation of" Montrose Holdings, "[a]ll documents concerning Montrose's finances" for the past 5½ years, and "[a]ll documents provided to, provided by or concerning" various individuals and entities. (Henderson Decl., Ex. A.) There is simply no justification for delving into the finances or formation documents of an entirely separate company other than to harass its investors/board members, some of whom are defendants in the Underlying Action.

Even aside from relevance, the Subpoena seeks to impose an undue burden on Montrose Holdings. *See Nova Biomed. Corp.*, 182 F.R.D. at 423-24 (in addition to relevance, a court assessing the burden on a non-party should analyze the specifics about the requested documents, the need of the requesting party for the documents, the breadth of the requests, the time period of the requests and the particularity of the requests). That Montrose Holdings is a non-party "entitles [it] to consideration regarding expense and inconvenience." *Id.* (internal quotations omitted).

As the personal jurisdiction argument makes clear, Montrose Holdings' subsidiaries operate from the People's Republic of China and Hong Kong. (Henderson Decl., ¶¶ 5-6.) The Subpoena thus seeks the production of documents from literally **half-way around the world**. *Nova Biomed. Corp.*, 182 F.R.D. at 424. Moreover, the scope of documents sought is virtually without boundaries. The Subpoena's Request No. 2, for example, seeks "[a]ll documents concerning [Montrose Holdings'] finances during the time period from January 1, 2000 to the present." (Henderson Decl., Ex. A.) Because

virtually every document "concern[s]" finances in some respect, under some interpretations of that Request, plaintiffs could be seeking every single document Montrose Holdings has generated in the last five years. In *Concord Boat Corp.*, a court rejected similarly vague requests "because they are guaranteed to produce information which would not even meet the broad standard of relevancy." 169 F.R.D. at 50-51 (regarding request for documents on non-party's financial condition). Similarly, Request Nos. 1 and 3 are unduly burdensome in that they are overbroad on their face – requesting all documents "concerning the formation and operation of" Montrose Holdings, which could be literally tens of thousands of pages of documents and documents "provided to, provided by or concerning" at least eight entities and individuals, with no attempt to narrow the scope by subject matter or time frame. (Henderson Decl., Ex. A.)

In short, the sweeping Subpoena would impose an undue burden upon Montrose Holdings, both because the documents sought are apparently irrelevant to the Underlying Action and because the Subpoena itself is vague and hopelessly overbroad. For these independent reasons, this Court should quash the Subpoena.

## CONCLUSION

For the foregoing reasons, Montrose Holdings respectfully requests that this Court grant its motion to quash the Subpoena.

Dated: Providence, Rhode Island
August 4, 2005

Respectfully submitted,

ADLER POLLOCK & SHEEHAN P.C.

By: ______________________________
Geoffrey W. Millsom (#6483)

One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: 401-427-6217
Fax: 401-751-0604

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
Marc E. Kasowitz
Christopher P. Johnson
Courtney Ozer DeCristofaro
1633 Broadway
New York, NY 10019
Tel: 212-506-1700
Fax: 212-506-1800

Attorneys for Montrose International
Holdings Limited (BVI)

CERTIFICATE OF SERVICE

I hereby certify that I am over 18 years of age and not a party to this action. On August 4, 2005, I caused to be served the foregoing Memorandum Of Law In Support Of The Motion Of Montrose International Holdings Limited (BVI) To Quash The Subpoena Directed Towards It By William S. Shanahan And Antares, LLC by regular mail upon Steven I. Locke, Carabba Locke LLP, 100 William Street, Suite 310, New York, NY 10038.